IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs.  ) | Case No.  5:07-cr-9-SLB-JEO |
| ) | |
| BRIAN SCOTT CULVER, ) | |
| ) | |
| Defendants.  ) | |

MEMORANDUM OPINION

This cause came before the court on the Government's motion for detention of the defendant pursuant to 18 U.S.C. § 3142.  The court conducted a detention hearing lasting almost five hours over two days, at which testimony was presented by two Hoover police detectives, several members of the defendant's church, his supervisor at work, and his sister.  Because of the nature of the case and evidence, the court is taking the unusual step of filing this memorandum opinion to explain its decision to set bond and conditions of release for the defendant.

The defendant is charged in a two-count indictment with using "a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct," using materials shipped in interstate or foreign commerce, in violation of 18 U.S.C. 2251(a).  The statutory range of punishment for this offense is not less than 15 years and not more than 30 years in prison.  A tentative advisory Guidelines sentencing calculation suggests an advisory Guideline range of 27 to 30 years if he is convicted of these two counts in the indictment.  Furthermore, as it relates to bond considerations, 18 U.S.C. § 3142(e) of the Bail Reform Act provides in relevant part:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is

> probable cause to believe that the person committed . . . an offense involving a minor victim under section . . . 2251 . . . .

Thus, subject to rebuttal by the defendant, the court starts from the position that the Bail Reform Act presumes that he should be detained, inasmuch as the indictment is a finding of probable cause triggering this provision.

In this case, the defendant has presented sufficient evidence to rebut the presumption of detention, but it remains a factor to be considered along with the other statutory factors delineated at § 3142(g). Those factors include:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or *involves a minor victim* or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. 3142(g) (Italics added).  Other relevant provisions of the Bail Reform Act also state:

> In any case that involves a minor victim under section . . . 2251 . . . of this title, or a failure to register offense under section 2250 of this title, any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).

18 U.S.C. § 3142(c)(2).  The references to conditions at "subparagraphs (iv), (v), (vi), (vii), and (viii)" involve the following conditions of release as a minimum for cases involving a minor victim:

(iv) abide by specified restrictions on personal associations, place of abode, or travel;

(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii) comply with a specified curfew;

(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon.

18 U.S.C. § 3142(c)(1).  Finally, the Bail Reform Act expressly preserves to defendants the presumption of innocence, see § 3142(j), and mandates that release on conditions be "subject to the *least restrictive* further condition, or combination of conditions, that such judicial officer determines will *reasonably* assure the appearance of the person as required and the safety of any other person and the community. . . ."  18 U.S.C. § 3142(c)(1)(B) (Italics added).  On a motion for detention, the Government must prove by "clear and convincing evidence" that there is no condition or

3

combination of conditions that can reasonably assure the appearance of the defendant and that he not be a danger to the community or another person. 18 U.S.C. § 3142(f).

As noted above, the presumption of detention is rebuttable. Once the Government has made the showing of probable cause that triggers the presumption with respect to minor victims of crime, the defendant has the burden of production, but not persuasion, to come forward with evidence suggesting that he is neither likely to flee nor be a danger. United States v. Hurtado, 779 F.2d 1467, 1470 note 4 (11th Cir. 1985). The burden of proving the inefficacy of conditions of release always remains with the Government, and that burden must be carried with "clear and convincing evidence. As the Eleventh Circuit said in Hurtado, addressing the rebuttable presumption:

> At that point, it becomes the task of the defendant to come forward with evidence to meet his burden of production – that is, evidence to suggest that he is either not dangerous or not likely to flee if turned loose on bail. Under the statute he enjoys wide latitude in securing information to rebut these presumptions: "The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C.A. § 3142(f). The procedural tools provided are used only to effectuate the inquiry mandated by subsection (f): "whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community· . . . ." The statute leaves for trial the defendant's opportunity to rebut the finding of probable cause.
>
> * * *
>
> But when the question is whether the defendant has successfully rebutted the presumption created in subsection (e), the judicial officer is directed to the four-part catechism of subsection (g). Factor (g)(2) permits the magistrate or the trial judge to consider "the weight of the evidence against the person." In order to make that determination, it may well be necessary to open up the issue of probable cause since that too is a question of evidentiary weight. At that point the defendant is guaranteed by subsection (f) the various rights noted above, including the right to cross-examine government witnesses whose testimony led to the evidentiary finding of probable cause. Though the judicial officer retains discretion in such hearings "to curtail

> cross-examination based upon such criterion [sic] as relevancy, or to prevent a pretrial hearing from becoming a full-blown trial," still "the court should always exercise that discretion with the recognition that a pretrial detention hearing may restrict for a significant time the liberty of a presumably innocent person." Delker, 757 F.2d at 1398.

Id. at 1479-80 (quoting United States v. Delker, 757 F.2d 1390, 1398 (3d Cir. 1985)).

At this point several things about this case are clear. First, the indictment creates adequate probable cause to trigger the presumption of detention based on a minor victim under § 2251(a). Second, the defendant came forward with sufficient evidence to rebut the presumption, forcing the Government and the court to analyze the detention issue under the four-factor provision of § 3142(g). Third, this analysis requires the court to undertake, among other things, an assessment of "the weight of the evidence" against the defendant. Thus, here, the court turns to the four factors described in § 3142(g), addressing for each whether the evidence supports or refutes the need for detention.

### A.  Nature of the Offense

The first of the four factors is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or *involves a minor victim* or a controlled substance, firearm, explosive, or destructive device." (Italics added). The Government's theory of this case asserts that on an unknown date between September 2002 and November 2003, the defendant drugged his thirteen-year-old step-daughter (and, perhaps, other members of the family), stung her with a Taser to assure that she was unconscious, and videotaped his fondling and manipulation of her vulva and vagina. That videotape and two Polaroid

5

photographs constitute the bases of the child pornography "production" charges in the two counts of the indictment.

If true, this is certainly a horrid crime, well-deserving of the 15-to-30-year range of punishment provided by the statute. Further, the combination of the severity of the punishment the defendant may face and the crime's inherent proof that he is willing to harm a minor victim underscores the potential need for detention to prevent flight and further harm. Thus, on the whole, the nature of the offense supports a finding of detention.

B.  Weight of the Evidence

The second factor the court must consider is the weight of the evidence against the defendant. This factor asks the question whether the evidence against the defendant is so strong that a conviction seems inevitable, or is the evidence shaky, leaving open the real possibility that the defendant might be acquitted? It is thought that the stronger the evidence against a defendant and the more likely it is that he will be convicted, the more incentive he has to avoid the punishment by fleeing. Conversely, the weaker the evidence, the more incentive the defendant has to appear at trial and win his exoneration.

In this case, there are troubling aspects about the evidence against the defendant. On the one hand, the evidence supporting the fact that the defendant actually made the videotape is compelling in that his thumb print actually appears during the video. Two fingerprint experts are willing to testify that they can positively identify the defendant's thumb print from a picture of it taken from

the video itself.[1]  On the other hand, there is no apparent way to identify from the video *who* the female in the video is.  Although the step-daughter has testified before that she can identify herself from viewing the video, she admits that she has no independent memory of the events portrayed in it.  Also having viewed the video, the court must state that, other than concluding that it depicts a pubescent female, there is no way to determine that it is a minor female or an adult female.  The video is an extreme close-up of the female vulva and vagina, and no face or other identifying marks or signs appear in it by which one could conclude that it depicts the minor stepdaughter as opposed to someone else.[2]  To constitute an offense under § 2251(a), the Government must be able to prove beyond a reasonable doubt that the female depicted on the video and in the photographs is a minor, not an adult.  While the purported testimony of the stepdaughter that she can identify herself on the video is important evidence, it is subject to some question.

Additionally, other circumstances existing during the relevant time period tend to undercut the conclusion that the defendant videotaped his stepdaughter.  Not one other piece of child pornography has been linked to the defendant, despite thorough and extended searches of his home, his lake house, his vehicles, and his computers.  There is no indication that defendant has ever possessed or sought to possess any other form of child pornography, either before or after this time

---

[1] To be clear, the thumb print was not lifted off of the physical tape or tape casing.  Rather, a man's thumb can be seen in the video with such clarity that a picture showing the ridges and whorls of the thumb print could be taken from the video itself.

[2] Implicit in the questioning and arguments by the defense, although never explicitly expressed, is the assertion that the videotape was a "sex play" tape made by the defendant and his wife consensually, and the female depicted in it is not the thirteen-year-old step-daughter, but the defendant's adult wife.  In November 2003, when these allegations arose, defendant and his wife were just beginning the process of an acrimonious divorce after a mere nine months of marriage. The defendant now implies that his ex-wife is falsely accusing him to gain advantage in the divorce proceedings.

period.  The stepdaughter has no recollection of any such event.  There is no physical evidence corroborating that the stepdaughter is the female depicted in the video.  For example, the video depicts a plastic tampon applicator or "syringe" being inserted into the female's vagina, but similar "syringes" found at the defendant's home lack any DNA evidence associated with the minor.  None of them bear the defendant's fingerprints or DNA.  A medical examination of the stepdaughter failed to reveal any scratches or scarring consistent with the insertion of fingers or "syringes" and, indeed, the examination found that her hymenal ring was intact.  Thus, there are genuine evidentiary questions about whether the female depicted on the video is the minor child.

All of this tends to make the evidence against the defendant less than "open and shut." Ultimately, a jury may well conclude that the Government is correct, but as a "weight-of-the-evidence" factor, the court cannot say that the evidence against defendant is so strong that he will have no incentive to appear at trial.

### C.  History and Characteristics of the Defendant

The third factor identified by the Bail Reform Act is history and characteristics of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."

Again, on the whole, the evidence on this tends to favor the defendant.  Although it is true that, during the 2002-2003 time period, the defendant was abusing alcohol and/or controlled substances, for the last two-and-a-half years, he has been sober and clean after participating in a

drug-abuse therapy and counseling program at Bradford Lodge. He now is an active member and deacon in his Seventh-Day Adventist church, and participates in a "spirituality" group meeting every Monday at the Shades Mountain Baptist Church. He also works in the church radio ministry. Defendant is a life-long resident of Jefferson County, and held the same job with the Parker Group for 12 years before being laid off in the last month.[3] Defendant has resided at his parents' home in Hoover since separating from his wife in late 2003. Family, friends and work acquaintances, and church members have all expressed confidence that the defendant will not attempt to flee, and that they would offer themselves and their property to secure his release.

Other than matters arising out of these allegations, defendant has no significant criminal history. Last summer, he was convicted in state court of possession[4] of child pornography, involving the same videotape and photographs alleged in this indictment. In the same trial, he was acquitted of giving a controlled substance to a juvenile and of assaulting her with a stun gun. During those state proceedings and additional criminal proceedings in Cullman County that now have been dismissed, defendant appeared at all court proceedings and gave no indication of an intention to flee justice. Indeed, even after being convicted of possession fo child pornography last summer, he has remained free on $50,000 bond while on appeal.

---

[3] The lay-off apparently had nothing to do with the charges before the court. Defendant's supervisor testified that the lay-off was due to a slowdown in business, and that two other employees were laid off at the same time as defendant. Defendant continued to work at the Park Group for over three years after these allegations were first made in late 2003.

[4] It is important to note the fundamental difference between "possession" and "production" of child pornography. The jury's conclusion that he *possessed* child pornography says little about whether he produced it.

D. Dangerousness

The final § 3142(g) factor is "the nature and seriousness of the danger to any person or the community that would be posed" by the defendant's release.  In the context of this case, there are two distinct questions: is the defendant a danger to the community due to the nature of the charges against him, and is he a danger to a particular person, such as his ex-wife or former stepdaughter. The court believes that he does not present either danger.

First, on the question of danger to the community, there is no indication that the defendant has engaged in the production of child pornography on other occasions.  Other than this one videotape and set of two photographs, no other form of child pornography has been linked to him. As mentioned, his home, lake house, vehicles, and personal and business computers all have been thoroughly searched, and no other contraband or illegal pornography was located.[5]  There is no suggestion that the defendant has engaged in the business of producing, selling, or "swapping" child pornography.  Thus, it cannot be concluded that, if released, the defendant would be a danger to the community by continuing to engage in the production of child pornography.

The defendant also is not a danger to either his ex-wife or his former stepdaughter. Defendant is now divorced and has no regular contact with his former family, except through legal proceedings.  His ex-wife and former stepdaughter now live outside of the Jefferson/Shelby County area, making contact with them more difficult.  Most importantly, these allegations have been public for more than three years, have been the subject of a criminal trial and other legal proceedings, yet

---

[5] Some adult pornographic magazines were found, but the Government does not assert that these were illegal or involved child pornography.

there is no evidence that the defendant has threatened, harassed, or otherwise harmed his ex-wife or former stepdaughter.

## Conditions of Release

Based on a careful analysis and consideration of all of the evidence bearing on the presumption of detention as well as the § 3142(g) factors, the court concludes that there are conditions of release that can be set which will reasonably assure that the defendant will not be a risk to flee or a danger to the community. Accordingly, the Clerk is DIRECTED to prepare the necessary appearance bond and standard order setting conditions of release, consistent with the following conditions of release:

1. That the defendant execute a secured appearance bond in the amount of $400,000, which shall be secured by sureties executing a first or second mortgage in favor of the Government on real property located in Jefferson or Shelby County, Alabama.

2. That the defendant be released into the third-party custody of his parents, who shall assume the obligations to supervise the defendant, return him to court as needed, and report to the court any violations of the conditions of release by the defendant.

3. That the defendant reside in the home of his parents and be subject to electronic monitoring to assure his compliance with a 24-hour-a-day curfew; defendant may obtain permission from the Probation Office to attend church, meet with his attorney, and attend to medical appointments, but in no event shall he leave the geographical boundaries of Jefferson and Shelby counties without the express permission of the court.

4. That the defendant shall have no unsupervised contact with anyone younger than eighteen years of age.

5. That the defendant shall have no unsupervised access to a computer or the Internet.

6. That the defendant shall refrain from using, consuming, possessing, or being around any narcotic or controlled substance, except those lawfully prescribed by a medical practitioner, and he shall be subject to drug urinalysis at the direction of the Probation Office.

7. That he shall refrain from possessing or being around a firearm, destructive device, or dangerous weapon.

8. That the defendant complete and maintain all sex-offender registrations required by law within forty-eight hours after his release.

DONE this 14th day of February, 2007.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE