FILED
2007 Apr-13 PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ALABAMA

## <u>NORTHEASTERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **5:07-CR-9-LSC-JEO** |
| | ) | |
| **BRIAN SCOTT CULVER** | ) | |

## <u>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO SUPPRESS ANY AND ALL ALLEGED EVIDENCE SEIZED FROM "LAKEHOUSE"</u>

COMES NOW the United States of America, by and through its counsel, Alice H. Martin, United States Attorney for the Northern District of Alabama, and Mary Stuart Burrell, Assistant United States Attorney for the Northern District of Alabama, and responds in opposition to the defendant's Motion in Limine to Suppress any and all Alleged Evidence Seized from "Lakehouse"(Doc. 57).  The Defendant's Motion is due to be DENIED for the following reasons:

I.    **<u>Background</u>**

On November 13, 2003, officers with the Hoover Police Department responded to a domestic violence call at a residence belonging to the defendant and shared by his wife and her children, including the victim in this case, K.W.  Investigation revealed that earlier in the evening, the defendant had given K.W. "two blue pills."

She was later awakened from her sleep from what appeared to be an electric shock to her neck.  When she was awakened, she found the defendant in her bed with her. He had a stethoscope around his neck.

K.W. woke her mother up and told her that the defendant had hurt her.  A confrontation ensued, at which time the defendant began gathering items in the house and left.  The police were called.  The defendant's wife recounted for the officers what had transpired and told the officers that she believed her husband had gone to their lakehouse in Cullman, Alabama.

The defendant's wife gave officers permission to search the house in Hoover. She informed the officers that she had found a syringe that had a lubricant in it and what later was determined to be a Schedule 4 sleep aid in the lubricant.  Officers searched the residence and found, among other things, a Polaroid camera, controlled substances, a stun gun box, and homemade child pornography.  The officers also saw markings on K.W.'s neck that appeared to be consistent with pattern wounds from a stun gun.

On November 13, 2003, officers sought and received a search warrant to search the lakehouse property for a stun gun, stethoscope, and pornographic photos and videos.  The facts recounted above were contained in the search warrant affidavit. Thus, at the time the search warrant was executed, the officers were aware of the

above-mentioned facts.  The officers had also seen the child pornography found at the defendant's residence.  It is described as follows:  There were several Polaroid photographs depicting a close-up view of a young female vagina being manipulated by adult male fingers, as well as photographs of the nude female's vagina.  The child in the pornography is laying on a sheet with a distinctive snowflake pattern on them.

On November 13, 2003, the search warrant was executed.  Among the items recovered and listed on the search warrant return were the following: one set of bed linens, blue in color, with snowflakes and checkers; assorted pills, including valium and alprazolam; a "Homestyle Affairs" magazine; six videotapes; and, a shaving kit with numerous sex toys and sex items.  The defendant now seeks to suppress these items as "exceeding the scope of the applicable search warrant."

II.   **<u>Caselaw</u>**

In *United States v. Jenkins*, 901 F.2d 1075 (11th Cir. 1990), the Eleventh Circuit Court of Appeals stated:

> The Fourth Amendment requires that a warrant particularly describe the place to be searched and the items or persons to be seized; exploratory rummaging is prohibited. *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir.1987). Only items described in the search warrant may be seized. *United States v. Bills*, 555 F.2d 1250, 1251 (5th Cir.1977); *United States v. Johnson*, 713 F.2d 654, 660 (11th Cir.1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984). An exception to this rule occurs "when in the course of performing a lawful search for an item listed on the warrant, the officers come across other

articles of an incriminatory character...." *Johnson*, 713 F.2d at 660. In such a case, the property may be seized under the "plain view" doctrine. *Id*. To justify application of the plain view doctrine, the seizing officer must (1) have independent justification for being in a position to see the items; (2) must discover the items inadvertently; and (3) must immediately observe that the items are evidence. *United States v. Blum*, 753 F.2d 999, 1002 (11th Cir.1985) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)). The officers must have probable cause to believe the items are evidence of the crime. *Arizona v. Hicks*, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

*Jenkins*, 901 F.2d at 1081-1082.

In *United States v. Smith*, 459 F.3d 1276 (11th Cir. 2006), the Eleventh Circuit Court of Appeals further stated:

the scope of the "plain view" doctrine extends to the seizure of items that, while not contraband themselves, may be used as evidence against a defendant. *See United States v. Ladson,* 774 F.2d 436, 439 (11th Cir.1985) (stating that, for the plain view exception to apply, "it must have been immediately apparent that the item was *evidence,* contraband or otherwise subject to seizure" (emphasis added)).

*United States v. Smith*, 459 F.3d at 1293.

The term "immediately apparent" was discussed in *United States v. Gordon*, 2007 WL 710094, *4 (M.D.Ala.,2007).

The definition of the term "immediately apparent" has been the subject of some debate within the Supreme Court. *See Texas v. Brown,* 460 U.S. 730, 741 (1983) (plurality opinion) ( "[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as

4

to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine."). Disputes over the term's meaning primarily arise in cases in which law enforcement officers have had to conduct additional examinations in order to determine the import of an object. *United States v. Pindell,* 336 F.3d 1049, 1055 (D.C.2003), *citing Horton,* 496 U.S. at 136-37.

It is clear, however, that the "immediately apparent" requirement is satisfied if the officers have probable cause to believe that the item viewed is evidence of a crime or contraband. *See Arizona v. Hicks,* 480 U.S. 321 (1987); *Pindell,* 336 F.3d at 1055. *See also United States v. Roberts,* 619 F.2d 379, 381 (5th Cir.1980) ("Police officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination."). Under the "probable cause" standard, the facts available to an officer must "warrant a man of reasonable caution in the belief ... that certain items may be contraband ... or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. at 742. *See United States v. Garner,* 907 F.2d 60, 62 (8th Cir.1990) (noting that probable cause does not demand that an officer be "sure" or "certain," but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be useful as evidence). "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Texas v. Brown,* 460 U.S. at 742 *quoting Brinegar v. United States,* 338 U.S. 160, 176 (1949).

*United States v. Gordon*, 2007 WL 710094 at 4.

III.   **Argument**

The defendant does not dispute the validity of the search warrant at issue.  He simply seeks to suppress the items seized as "exceeding the scope of the applicable

search warrant."  As stated earlier, the search warrant authorized the seizure of a stun gun, stethoscope,  pornographic photos and pornographic videos.  The items seized were one set of bed linens, blue in color, with snowflakes and checkers; assorted pills, including Valium and Alprazolam; a "Homestyle Affairs" magazine; six videotapes; and, a shaving kit with numerous sex toys and sex items.

Certainly, given what the officers knew (with regards to the details of the crime under investigation in Hoover) at the time they sought and executed the search warrant in question, the items seized were "immediately apparent" as evidence of the crime under investigation.  As described above, the images of child pornography found in the Hoover residence depicted a child being sexually abused while she laid on a sheet with a distinctive snowflake pattern. These sheets, the government will argue, are the same sheets found in the lakehouse during the search and the officers recognized them as such.  The child victim stated that the defendant had given her "blue pills" earlier in the evening on November 13, 2003.  She had taken one (she later tested positive for  the controlled substance in Valium) and threw the other one away (it was later recovered and was Alprazolam).  Certainly, seizure of controlled substances was proper due to the child's disclosure regarding the "blue pills." Given the discovery of the syringe that had a lubricant in it and what later was determined to be a Schedule 4 sleep aid in the lubricant, the sex items in the shaving bag were

6

also immediately apparent as evidence of the crime under investigation.  Of course, the videotapes (which contained pornography) and the "Homestyle Affairs" magazine (a pornographic magazine with photos and stories of an incestuous nature) were covered by the warrant.

The government does not argue at this point that each of these items is relevant and should be admitted as evidence in the trial of this case.  That is not the issue raised in the defendant's motion.  The government does submit however, that the items seized were properly seized under the "plain view" doctrine and their suppression pursuant to the defendant's motion should be DENIED.

IV.   **Conclusion**

Based on the forgoing, the government requests that the defendant's Motion in Limine to Suppress be DENIED.  If the court is not persuaded by the government's arguments, then the government asks in the alternative that the court reserve its ruling until the conclusion of the government's case-in-chief at trial so that evidence may be presented to support all counts of the indictment.  It would be impractical to present said evidence during an evidentiary hearing, because that would require a mini-trial.

7

Respectfully submitted this the 13th day of April, 2007.

ALICE H. MARTIN
United States Attorney

/s/
LAURA D. HODGE
Assistant United States Attorney

/s/
MARY STUART BURRELL
Assistant United States Attorney

8

## <u>CERTIFICATE OF SERVICE</u>

_____I hereby certify that on the 13th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following attorney of record: Herbie Brewer.

/s/
MARY STUART BURRELL
Assistant United States Attorney