FILED
2007 May-18 AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ALABAMA**

**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 5:07-CR-9-LSC-JEO |
| | ) | |
| **BRIAN SCOTT CULVER** | ) | |

**GOVERNMENT'S RESPONSE TO MOTION FOR PRODUCTION OF 404(b) EVIDENCE**

COMES NOW the United States of America, by and through its counsel, Alice H. Martin, United States Attorney for the Northern District of Alabama, and Laura D. Hodge, Assistant United States Attorney for the Northern District of Alabama, and states the following:

The Government intends to offer the following evidence which may be construed as 404(b) evidence. The government does not concede that this evidence is necessarily 404(b) evidence, and files this Response out of an abundance of caution.

The Government expects to present evidence that on the afternoon on November 11, 2003, the defendant gave the minor victim, K.W., two blue pills for a headache that he told her were Aleve. K.W. took one and, unknown to the defendant, threw the other one away. The pill she threw away was recovered from

a kitchen trash can and found to be alprazolam. K.W.'s blood was tested for drugs the following day and it tested positive for diazepam. The controlled substances alprazolam (also known as Xanax) and diazepam (also known as Valium) were found in an Aleve bottle in the Hoover, AL residence where the defendant lived with K.W., her mother and brother.

Late on the night of November 11, 2003, the minor victim, K.W., was awakened by a shocking sensation to the back of her neck. When K.W. turned to see what had caused the sensation, she saw the defendant in bed with her with a stethoscope around his neck. During a search of the Hoover residence in the early morning hours of November 12, an empty Raptor stun gun box was found. Officers on the scene observed the marks on K.W.'s neck and believed them to be consistent with marks that can be left by a stun gun.

Also found in this search was a Polaroid camera located in an attic area accessible through K.W.'s closet. The defendant is charged with production of five Polaroid photographs containing child pornography (images of K.W.). Officers also collected a vaginal syringe containing a KY Jelly-type substance and a small white pill that K.W.'s mother found under K.W.'s bed. The defendant admitted to K.W.'s mother that he put the pill into the syringe, but it was only Pamprin. A Pamprin bottle was found in K.W.'s bathroom; however, she had

never seen it before. This pill bottle was collected by Hoover PD on November 12. It contained six white pills. These pills were analyzed by the Alabama Department of Forensic Sciences and three were found to be Stilnox (a brand name for the controlled substance zolpidem) and three were found to be Ambien (also a brand name for the controlled substance zolpidem).

On November 14, 2003, officers conducted another search of the Hoover residence with the consent of K.W.'s mother and found an 8mm videotape hidden in an attic storage area accessed from the master bedroom. Material on this video is the basis for Count One of the Indictment. This material shows a close-up view of a vagina being manipulated by a man's fingers. A vaginal syringe is also inserted into the vagina. The syringe found by K.W.'s mother on November 12 is similar to the one seen in this material. K.W. identifies herself as the person in the material in question. No faces are shown in this video or in the Polaroids. K.W. has no recollection of the events depicted in these images. It is the government's theory of the case that K.W. had been given controlled substances that rendered her unconscious when these crimes were perpetrated against her.

In both the Polaroids and the video, bed linens with a distinct blue and white snowflake pattern are visible underneath the victim's bottom. Testimony will be presented to show that these sheets were purchased by the victim's mother

and given as a Christmas gift to the defendant in December, 2002. The sheets were only used at the Cullman lakehouse. Therefore, it is believed that these crimes occurred at the Cullman lakehouse.

The government will present testimony from K.W. that on two occasions at the lakehouse during the time period covered by the indictment, K.W. and her brother were there with the defendant and without her mother. On one of these occasions, the defendant gave K.W. some pills for a headache. She fell asleep on the couch that night and woke up the next morning in the bed where the defendant and her mother usually slept. The snowflake sheets were on this bed. K.W. will testify that she did not know how she got there.

A search warrant for the Cullman lakehouse was obtained and executed on November 13, 2007. The government intends to offer the following items from that search: blue and white sheets with a snowflake pattern; one package of alprazolam and one package of Valium (diazepam); and a "Homestyle Affairs" magazine (this is a pornographic magazine dealing with incestuous relationships). The government concedes that the "Homestyle Affairs" magazine is 404(b) evidence offered to show the defendant's intent, proof of motive and state of mind.

However, the government submits that all other evidence referenced in this document is circumstantial proof of the defendant's involvement in the charged

conduct, it provides background and context to the crimes charged in the indictment, and will serve to complete the story for the jury. According to Federal Rule of Evidence 404(b), it states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The Eleventh Circuit has held that:

> [E]vidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); See also, United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995); United States v. Lehder-Rivas, 955 F.2d 1510 (11th Cir. 1992); and United States v. Jones, 913 F.2d 1552 (11th Cir. 1990).

Furthermore, it is established that "'[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" McLean, 138 F.3d 1398 at 1403 (11th Cir. 1998)(quoting United States v. Williford, 764 F.2d 1493,

1499 (11th Cir. 1985). In a situation where evidence is present that conforms to this standard, the court has ruled that "because the evidence is intrinsic, not extrinsic, we do not engage in a Rule 404(b) analysis." United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992).

Such intrinsic evidence is, of course, subject to a Federal Rule of Evidence 403 balancing test. See United States v. Huppert, 917 F.2d 507 (11th Cir. 1990). However, the court has held that "'[t]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. 'Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.'" United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992)(quoting United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989)).

Therefore, from the facts present in the instant case, it is clear that the above mentioned intrinsic evidence is inextricably intertwined with the crime and the other evidence which will be adduced to prove the defendant's guilt. In addition, the intrinsic evidence found in this case clearly demonstrates the context, motive and set-up of the charged offenses. Furthermore, the evidence in question is fundamentally linked in time and circumstance with the charged crimes, forms an integral and natural part of the account of the offenses, and is necessary to

complete the story of the defendant's crime for the jury.  For these reasons, the government believes that the above mentioned evidence, save the "Homestyle Affairs" magazine, is not extrinsic evidence that is governed by Rule 404b, and files this Response only out of an abundance of caution for purposes of trial.  The "Homestyle Affairs" magazine should be admissible, because it is not offered to prove bad character and conformity therewith.

Respectively submitted this the 18th day of May, 2007.

                                        ALICE H. MARTIN
                                      United States Attorney

                                        /s/

                                        LAURA D. HODGE
                                        Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 18th day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorney of record:  Herbie Brewer.

            /s/
            LAURA D. HODGE
            Assistant United States Attorney