FILED

2007 May-25  PM 05:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **5:07-CR-0009-LSC-JEO** |
| | ) | |
| **BRIAN SCOTT CULVER** | ) | |

## <u>TRIAL MEMORANDUM</u>

### I.  <u>Violations Charged:</u>

A Superseding Indictment charges the defendant with six counts of production of child pornography.  18 U.S.C. § 2251(a).  Count One alleges the production of an 8mm videotape which shows a minor engaged in sexually explicit conduct.  Counts Two-Six allege the production of five different Polaroid photographs which show a minor engaged in sexually explicit conduct.

### II.  <u>Elements:</u>

#### A.  <u>Counts One-Six: 18 U.S.C. § 2251 (a)</u>

<u>       Title 18, United States Code, Section 2251(a)</u> makes it a Federal offense for anyone to employ, use, persuade, induce, and entice a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The defendant can be found guilty of these charges only if the following elements are proven beyond a reasonable doubt:

___*First*:        That the Defendant did knowingly employ, use, persuade, induce, entice, or coerce any minor[s] to engage in any sexually explicit conduct, as charged;

*Second*:        That the Defendant did so for the purpose of producing any visual depiction of such conduct, as charged; and

*Third*:        That said visual depiction was produced using materials that have been mailed, shipped, and transported in interstate and foreign commerce by any means, as charged.

_____

## III.   **Facts:**

This case began on November 12, 2003, when Hoover PD received a domestic violence call involving a 13 year old girl (K.W.).  KW reported that she had been awakened from her sleep from what seemed to be an electric shock. KW's stepfather, Brian Culver, was in bed with her when she awoke and he had a stethoscope around his neck.  During the investigation, KW's mother, Sharon Culver, told officers that she had found a plastic vaginal syringe/applicator containing a KY Jelly-type substance and a small white pill.  The pill was determined to be a Schedule IV sleep aid.

Brian Culver became angry when these items were discovered.  He took some things from the house in Hoover and left.  Once he returned to the house he admitted to officers that he had gone to the family's lake house in Cullman

2

County.  A search warrant for the Cullman residence was obtained.  Various items including a set of bed sheets with a snowflake pattern were taken.

The house in Hoover was searched with Sharon Culver's consent on November 12, 2003.  Officers discovered an envelope on a bookshelf which contained five Polaroid photographs of a nude female's genitals (Counts Two-Six) and two Polaroid photographs of a nude male's genitals.  A Polaroid camera was discovered in an attic access area near K.W.'s room.  Officers also found a stun gun box.  The victim had markings on her neck that were consistent with a stun gun.

During a subsequent search of the residence on November 14, officers found an 8mm video tape in an attic area accessed from the master bedroom.  That contained images of a young, nude female's genital area (Count One).  The snowflake patterned sheets from the lake house are visible in the video.  The female is later identified as Brian Culver's 13 year old step-daughter, KW.  The video shows the victim being digitally penetrated.  A vaginal syringe/applicator is inserted into the victim's vagina, and it appears that it contains a lubricant that is released into the victim's vagina.  At one point in the video, the defendant's thumb was close enough to the camera lens that a fingerprint identification is made.  This fingerprint positively matches that of Brian Culver.

_____

IV.      **Trial Issues:**

**Admissibility of 404(b) Evidence**

___The Government intends to offer the following evidence which may be construed as 404(b) evidence.  The government does not concede that this evidence is necessarily 404(b) evidence.

The Government expects to present evidence that on the afternoon on November 11, 2003, the defendant gave the minor victim, K.W., two blue pills for a headache that he told her were Aleve.  K.W. took one and, unknown to the defendant, threw the other one away.  The pill she threw away was recovered from a kitchen trash can and found to be alprazolam.  K.W.'s blood was tested for drugs the following day and it tested positive for diazepam.  The controlled substances alprazolam (also known as Xanax) and diazepam (also known as Valium) were found in an Aleve bottle in the Hoover, AL residence where the defendant lived with K.W., her mother and brother.

Late on the night of November 11, 2003, the minor victim, K.W., was awakened by a shocking sensation to the back of her neck.  When K.W. turned to see what had caused the sensation, she saw the defendant in bed with her with a

4

stethoscope around his neck.  During a search of the Hoover residence in the early morning hours of November 12, an empty Raptor stun gun box was found. Officers on the scene observed the marks on K.W.'s neck and believed them to be consistent with marks that can be left by a stun gun.

Also found in this search was a Polaroid camera located in an attic area accessible through K.W.'s closet.  The defendant is charged with production of five Polaroid photographs containing child pornography (images of K.W.). Officers also collected a vaginal syringe containing a KY Jelly-type substance and a small white pill that K.W.'s mother found under K.W.'s bed.  The defendant admitted to K.W.'s mother that he put the pill into the syringe, but it was only Pamprin.  A Pamprin bottle was found in K.W.'s bathroom; however, she had never seen it before.  This pill bottle was collected by Hoover PD on November 12.  It contained six white pills.  These pills were analyzed by the Alabama Department of Forensic Sciences and three were found to be Stilnox (a brand name for the controlled substance zolpidem) and three were found to be Ambien (also a brand name for the controlled substance zolpidem).

On November 14, 2003, officers conducted another search of the Hoover residence with the consent of K.W.'s mother and found an 8mm videotape hidden in an attic storage area accessed from the master bedroom.  Material on this video

is the basis for Count One of the Indictment.  This material shows a close-up view of a vagina being manipulated by a man's fingers.  A vaginal syringe is also inserted into the vagina.  The syringe found by K.W.'s mother on November 12 is similar to the one seen in this material.   K.W. identifies herself as the person in the material in question.  No faces are shown in this video or in the Polaroids. K.W. has no recollection of the events depicted in these images.  It is the government's theory of the case that K.W. had been given controlled substances that rendered her unconscious when these crimes were perpetrated against her.

In both the Polaroids and the video, bed linens with a distinct blue and white snowflake pattern are visible underneath the victim's bottom.  Testimony will be presented to show that these sheets were purchased by the victim's mother and given as a Christmas gift to the defendant in December, 2002.  The sheets were only used at the Cullman lakehouse.  Therefore, it is believed that these crimes occurred at the Cullman lakehouse.

The government will present testimony from K.W. that on two occasions at the lakehouse during the time period covered by the indictment, K.W. and her brother were there with the defendant and without her mother.  On one of these occasions, the defendant gave K.W. some pills for a headache.  She fell asleep on the couch that night and woke up the next morning in the bed where the defendant and her

mother usually slept.  The snowflake sheets were on this bed.  K.W. will testify that she did not know how she got there.

A search warrant for the Cullman lakehouse was obtained and executed on November 13, 2007.  The government intends to offer the following items from that search: blue and white sheets with a snowflake pattern; one package of alprazolam and one package of Valium (diazepam); and a "Homestyle Affairs" magazine (this is a pornographic magazine dealing with incestuous relationships). The government concedes that the "Homestyle Affairs" magazine is 404(b) evidence offered to show the defendant's intent, proof of motive and state of mind.

However, the government submits that all other evidence referenced in this section of the trial brief is circumstantial proof of the defendant's involvement in the charged conduct, it provides background and context to the crimes charged in the indictment, and will serve to complete the story for the jury.  According to Federal Rule of Evidence 404(b), it states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  The Eleventh Circuit has held that:

> [E]vidence of criminal activity other than the charged offense is not
> extrinsic under Rule 404(b) if it is (1) an uncharged offense which
> arose out of the same transaction or series of transactions as the
> charged offense, (2) necessary to complete the story of the crime, or
> (3) inextricably intertwined with the evidence regarding the charged

offense.

United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998);  See also, United States v. Ramsdale, 61 F.3d 825, 829 (11th Cir. 1995); United States v. Lehder-Rivas, 955 F.2d 1510 (11th Cir. 1992); and United States v. Jones, 913 F.2d 1552 (11th Cir. 1990).

Furthermore, it is established that "'[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.'" McLean, 138 F.3d 1398 at 1403 (11th Cir. 1998)(quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985).  In a situation where evidence is present that conforms to this standard, the court has ruled that "because the evidence is intrinsic, not extrinsic, we do not engage in a Rule 404(b) analysis." United States v. Church, 955 F.2d 688, 700 (11th Cir. 1992).

Such intrinsic evidence is, of course, subject to a Federal Rule of Evidence 403 balancing test. See United States v. Huppert, 917 F.2d 507 (11th Cir. 1990). However, the court has held that "'[t]he court's discretion to exclude evidence under Rule 403 is narrowly circumscribed. 'Rule 403 is an extraordinary remedy

which should be used only sparingly since it permits the trial court to exclude concededly probative evidence.'" <u>United States v. Church</u>, 955 F.2d 688, 700 (11th Cir. 1992)(quoting <u>United States v. Norton</u>, 867 F.2d 1354, 1361 (11th Cir. 1989)).

Therefore, from the facts present in the instant case, it is clear that the above mentioned intrinsic evidence is inextricably intertwined with the crime and the other evidence which will be adduced to prove the defendant's guilt. In addition, the intrinsic evidence found in this case clearly demonstrates the context, motive and set-up of the charged offenses. Furthermore, the evidence in question is fundamentally linked in time and circumstance with the charged crimes, forms an integral and natural part of the account of the offenses, and is necessary to complete the story of the defendant's crime for the jury. For these reasons, the government believes that the above mentioned evidence, save the "Homestyle Affairs" magazine, is not extrinsic evidence that is governed by Rule 404b, and files this Response only out of an abundance of caution for purposes of trial. The "Homestyle Affairs" magazine should be admissible, because it is not offered to prove bad character and conformity therewith.

### Transcripts From Other Court Proceedings

Because of the unavailability of two government witnesses, David Lucas

(former Hoover police officer) and Kelly Wood (Alabama Department of Forensic Sciences), the parties have agreed to read into the record their prior testimony from the state court trial against Mr. Culver (Jefferson County/Bessemer Divison, CC 2004-339, 340, 341, and, 342). The parties have agreed to refer to this only as other prior sworn testimony and will not make reference to it in such a way that would indicate a state court trial has been held.

### Adult Attendant

The government anticipates the presence of K.W.'s mother, Sharon Brasuell, in the courtroom during K.W.'s testimony. Mrs. Brasuell would be in the courtroom as K.W.'s adult attendant. An "adult attendant" is defined as "an adult described in subsection (I) who accompanies a child throughout the judicial process for the purpose of emotional support. 18 U.S.C. § 3509(a). Subsection (I) provides that: "A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child." A "child" is defined as "a person who is under the age of 18, who is or is alleged to be–(A) a victim of a crime of physical abuse, sexual abuse, or exploitation; or (B) a witness to a crime committed against another person." 18 U.S.C. § 3509(a)(2). K.W. is 17 years old.

## Admissibility of Video and Photographic Evidence

The government intends to offer into evidence the 8mm videotape that is the basis of Count One, as well as a VHS and DVD copy of the same (this will be done for the convenience of playing the tape in court, because of the unavailability of an 8mm video cassette player).  The government also intends to offer photographic evidence in the form of the Polaroids found at the residence in Hoover as well as photographs of evidence seized during the search and investigation of the Hoover residence and the lakehouse in Cullman.

Under Fed.R.Evid. 901(a) the authentication requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.  *United States v. Hawkins*, 905 F.2d 1489 (11th Cir. 1990). "A witness qualifying a photograph need not be the photographer or see the picture taken; it is sufficient if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."  *United States v. Clayton*, 643 F.2d 1071, 1074 (11th Cir. 1981).   "[A]dmission of this type of photographic evidence is a matter largely within the discretion of the court."  *Id.*

## Admissibility of evidence

Admissibility of evidence is a matter which lies within the discretion of the district court.  United States v. Lopez, 758 F.2d 1517, at 1521 (11th Cir. 1985).

11

The chain of custody which the government will offer in its case-in-chief will be sufficient to warrant the district court in admitting each item of evidence.   Any objection by the defense to the chain of custody would go more to the weight than the admissibility of the evidence.  Lopez, supra; p. 1521; United States v. Clark, 732 F.2d 1536, 1543 (11th Cir. 1984).

## V.       Conclusion

In a trial expected to last one week, the United States believes that the evidence will establish beyond a reasonable doubt that the defendant did employ, use, persuade, induce, and entice a minor to engage in sexually explicit conduct for the purpose fo producing a visual depiction of such conduct, as charged, in violation of Title 18, United States Code, Section 2251(a).

Respectfully submitted this the 25th day of May, 2007.

ALICE H. MARTIN
United States Attorney

/s/

LAURA D. HODGE
Assistant United States Attorney

_____

## CERTIFICATE OF SERVICE

This is to certify that on May 25, 2007, a copy of the foregoing has been served on the defendant by filing a copy of the same using the electronic filing system for the Northern District of Alabama, U.S. District Court, to his attorney of record, Herbie Brewer.

/s/
LAURA D. HODGE
Assistant United States Attorney