FILED
2007 May-28  PM 03:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 5:07-cr-009-LSC-JEO |
| | ) | |
| **BRIAN SCOTT CULVER.** | ) | |

### TRIAL MEMORANDUM

**I.    Facts**

On November 10, 2003, the Defendant, Brian Scott Culver, discovered that his then 13 year old stepdaughter, KW, had recently become sexually active, when he overhead part of a sexually explicit telephone conversation between KW and her "boyfriend." Mr. Culver notified his wife, Sharon Culver (who is also KW's mother), and Mrs. Culver listened to the telephone conversation as well, and requested that Mr. Culver audio tape this conversation. Mr. and Mrs. Culver then spoke to KW about the telephone call, and ultimately, all three (3) went to the house of the boyfriend, in the early morning hours, to discuss the situation with the boyfriend and his father.

When Mr. and Mrs. Culver and KW returned to their Hoover residence in the early morning hours of November 11, 2003, Mr. and Mrs. Culver eventually quarreled over Mr. Culver's role in disciplining or counseling KW, with both Mrs. Culver and KW reminding Mr. Culver that he was "not KW's father." During this

quarrel, Mr. Culver stated that, as he was acting in the role of KW's father, he should have input into disciplinary decisions, and then left the Hoover home for the lake home in Cullman.

Mr. Culver later called Mrs. Culver and stated that KW could not be trusted and should not be left alone at the house on November 11, which was the Veteran's Day holiday, and Mrs. Culver took KW to work. Mr. Culver later picked KW up and took her back to the Hoover home, where KW made cookies for a "cross country banquet" that evening, which was attended by Mr. and Mrs. Culver, KW, and KW's brother. Sometime during this time frame and before going to the banquet, KW complained of a headache and Brian Culver reportedly gave her some medication for same. Thereafter, the family left for the banquet. After the banquet, after dropping off one of KW's friends at his house, Mr. and Mrs. Culver and KW and KW's brother returned to the Hoover house and went to bed. Prior to going to bed, at approximately 10:00 p.m., KW and her mother had discussions regarding her behavior of the events over the preceding two (2) days. There were no allegations of any other medications being given by the Defendant, Brian Culver, to KW for any purpose.

At around midnight on November 11, 2003, KW claims to have been awakened by a stinging sensation on the back of her neck, and awaking to find Mr.

Culver in her bed with her.  Despite this allegation, before awakening her mother, KW went downstairs to reportedly obtain a drink of water, and only thereafter returning back upstairs to awaken her mother to relate the incident.  At no time was KW reportedly "screaming" or "hollering" about the alleged "stinging" or "shocking" incident.  Mrs. Culver and Mr. Culver began an argument, with Mr. Culver vehemently denying any wrongdoing.  Ultimately, Mr. Culver stated that he would not stand for being falsely accused, and that he wanted a divorce.  He informed Mrs. Culver that she could remain in the Hoover house with her children until the school term ended, and he would reside at the Cullman lakehouse during that time.  He told Mrs. Culver that he would bring back hers and the children's clothes and personal items from the lakehouse.  Mr. Culver then left the Hoover residence, traveled to the lakehouse in Cullman, and returned with various items of clothing and personal articles of Mrs. Culver and the children.

During this time, the Hoover Police Department had responded to a "911 call" placed by Mrs. Culver, and found the Polaroid photographs alleged to be evidence in this case, along with other alleged evidence provided or pointed out by Mrs. Culver.  Mr. Culver was arrested for domestic violence, initially a

misdemeanor.[1]  Two (2) days later, on November 14, 2003, Detective Darren McGairty also "re-searched" a small portion of the attic area of the house that had previously been searched by a trained K-9 officer, and recovered the 8mm videotape alleged to be evidence in this case.  This second search occurred only after the mother, Sharon Culver, had delivered to Officer McGairty, personally, an 8mm video camcorder with no explanation as to why she concluded it might be relevant to the investigation.  The Defendant, Brian Culver, remained incarcerated throughout this investigation and for many months, unable to make bond.

Mrs. Culver filed for divorce from Mr. Culver on November 20, 2003, and sought to have the Court "freeze" all of Mr. Culver's assets and award them to her, identifying each asset by account number and other specific characteristics, despite having contributed nothing to these accounts during the nine (9) month marriage. Mrs. Culver also sought Fifty Thousand Dollars ($50,000.00) in cash for interim attorneys' fees and personal support, as well as monthly spousal support for Three Thousand Five Hundred Dollars ($3,500.00) per month.  In the divorce, Mrs. Culver also asserted her own personal "civil action for damages" against Mr. Culver.  This civil action was later severed from the divorce, and is currently

---

[1] Eventually, this charge was changed to a domestic violence felony, with additional charges of "possession of pornographic materials" and "furnishing drugs to a minor" being brought in state

pending. Additionally, on November 21, 2003, Mrs. Culver, on behalf of KW, filed a separate Civil Action Case Number CV 2003-1622 in the Circuit Court of Jefferson County, Bessemer Division, seeking Ten Million Dollars ($10,000,000.00) in damages. All of these allegations and lawsuits occurred before KW had ever viewed the photographs or videotape.

Additionally, after the divorce court awarded Mr. Culver the exclusive possession and use of the Cullman lakehouse, Mrs. Culver and her then-married boyfriend, along with KW and KW's brother, used the lakehouse dock to ride jet skis and sunbathe.[2]

II.  **Trial Issues**

   A.   Defense Position

In this case, the defense, as well as challenging the identity of the female subject depicted in the Polaroid photographs and 8mm videotape, as well as the accuracy and veracity of all other alleged "facts," evidence, and proposed testimony, also specifically challenges venue, jurisdiction, the multiplicity of the indictment, the constitutionality of the charging statute, both "facially" and "as

---

court. Mr. Culver was found **"not guilty"** of the domestic violence and "furnishing drugs" charges.
[2] The Government alleges that the "materials" at issue in this case were produced at this lakehouse.

---

applied," and has raised numerous suppression and *in limine* challenges to the Government's proposed evidence.

  B.  "404(b)" Evidence

The Government has stated it intends to offer certain evidence "which may be construed as 404(b) evidence."[3]  *See* Gov't's Trial Brief, at 4.  The Government's Trial Brief essentially repeats its "Response to Defendant's Motion to Produce 404(b) Evidence," to which the defense has filed a "Reply in Opposition," which it respectfully adopts as part of this "Trial Brief."  The defense respectfully requests a pretrial determination of this issue.

  C.  Transcripts from Other Court Proceedings

The Government's Trial Brief states that, due to unavailability of two (2) witnesses, to-wit: David Lucas (former Hoover Police officer) and Kelly Wood (Alabama Department of Forensic Sciences), the parties have agreed to read their prior "state court testimony" into the record.  However, the defense avers that Officer Lucas' testimony may well need to be "redacted" if certain "Motions in Limine" are granted, and respectfully requests a pretrial determination of this issue.

---

[3] The Government reportedly does not contend the alleged evidence is *in fact* "404(b)" evidence, and avers that it filed its "Response to Defendant's Motion to Produce 404(b) Evidence" only in

    D.        <u>Adult Attendant</u>

The Government's Trial Brief also gives notice that it "anticipates the presence of KW's mother, Sharon Brasuell,[4] in the courtroom during KW's testimony" as "KW's adult attendant." While the Government correctly notes that KW is statutorily entitled to an "adult attendant" during her testimony, the use of Sharon Culver in that role would deprive the Defendant of his right to due process and thorough and sifting cross examination, because Sharon Culver is the primary witness against the Defendant and her ability to hear the examination of KW would allow her to conform her anticipated testimony with that of her daughter, and, in any event, the defense would be deprived of the untainted independent recollection of Sharon Culver. It is noted that this issue arose in the prior "state court proceedings," where KW testified extensively, and an accommodation was made for her grandmother and aunt to be present in the courtroom, and KW had no problems in her testimony. KW is now older and has had the experience of the previous state court trial. The defense respectfully requests that KW be required to select a non-testifying "adult attendant."

---

"an abundance of caution" following repeated admonishment by the Magistrate Judge that no notice of "404(b)" evidence had been given to the defense.

[4] "Sharon Brasuell" is the same person as Sharon Culver, who is the mother of KW and the previous wife of the Defendant, Brian Culver. Her name was changed to "Brasuell" when she

      E.        Admissibility of Video and Photographic Evidence

The defense respectfully avers that the video evidence cannot be authenticated as being the "original" 8mm videotape actually seized from the Hoover residence, and that this is a matter going to the admissibility of the evidence rather than its mere weight.

## III. CONCLUSION

Like the United States, the defense anticipates that the trial will last one (1) week; however, the defense believes that the Government will be unable to meet its burden of proving each and every element of the charged offenses beyond a reasonable doubt.

                                  Respectfully submitted,

                                  s/Herbie Brewer
                                  **HERBIE BREWER (asb-8713-b55h)**
                                  **Attorney for Defendant**
                                  **215 21st Street North, Suite 200**
                                  **Birmingham, Alabama 35203**
                                  **(205) 323-6699**

---

married her boyfriend a short number of days, almost immediately after legally being able to do so following the Final Judgment of Divorce from Mr. Culver.

*p. 9 of 9*
*US v. Culver*
*Trial Brief*

---

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorneys of record: Alice H. Martin, United States Attorney, Laura D. Hodge, Assistant United States Attorney, Mary Stuart Burrell, Assistant United States Attorney.


**s/Herbie Brewer**_____
Herbie Brewer